# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 15-06274-DD |
| Nathaniel Bell Brown, | Chapter 7 |
| Debtor. | ORDER ON OBJECTION TO EXEMPTION |

This matter is before the Court on Janet B. Haigler, the chapter 7 trustee's ("Trustee") objection to a claimed exemption of Nathaniel Bell Brown ("Debtor") in personal injury settlement proceeds [Docket No. 17]. Debtor filed a response to Trustee's objection on March 23, 2016 [Docket No. 24]. A hearing was held on May 19, 2016. At the conclusion of the hearing, the Court took the matter under advisement and gave the parties an additional fourteen (14) days to submit supplemental briefs. The parties submitted supplemental briefs on June 2, 2016 [Docket Nos. 30, 31] and replies on June 9, 2016 [Docket No. 33, 34]. The Court now makes the following findings of fact and conclusions of law.

## FACTS

1.   Debtor was involved in an accident while driving a motorcycle on October 9, 2014. Debtor was not at fault for the accident.

2.   Debtor was significantly injured in the accident and spent about two and a half weeks in the hospital. In the accident, Debtor dislocated his left hip, broke his left leg in three places, broke his left ankle, several of his toes were broken, and one of his toes on his left foot had to be amputated. Debtor was unable to walk for ten months and still walks with a limp. He still takes medication on a daily basis and has difficulty wearing shoes. Debtor testified that he had no health problems prior to the accident.

3. At the time of the accident, Debtor was not married and did not have any children living with him. Debtor was unemployed at the time of the accident and was not collecting unemployment benefits. Prior to the accident, Debtor had previously worked as a mechanic.

4. At the time of the accident, Debtor maintained insurance policies with Progressive Direct Insurance Company ("Progressive") and USAA.[1] The at-fault driver in the accident was insured by Allstate Fire & Casualty Company ("Allstate").

5. Debtor retained Chad Fuller of the Law Offices of McGrath and Danielson to represent him in connection with his injuries stemming from the accident. Debtor's agreement with Mr. Fuller states that Mr. Fuller will receive 33 percent of any gross recovery, plus expenses.

6. On June 8, 2015, Mr. Fuller sent a demand letter to Allstate. Attached to the demand letter were medical bills and billing statements demonstrating medical expenses in the amount of $192,339.67.

7. On July 9, 2015, Mr. Fuller sent a demand letter to Progressive. Again, attached to the demand letter were medical records and billing statements showing medical expenses in the amount of $192,339.67. The letter also advises that Debtor anticipates needing at least two more surgeries as a result of injuries incurred in the accident.

8. On July 20, 2015, Mr. Fuller sent a demand letter to USAA. The medical records and billing statements were again attached to the demand letter. The USAA letter also contains a statement advising that Debtor will need two more surgeries.

9. On November 20, 2015, Debtor executed releases for all three insurance policies. Debtor received $250,000.00 from Allstate, $25,000.00 from Progressive, and $50,000.00 from USAA. These amounts were the policy limits on all three of the policies.

---

[1] Debtor's Progressive policy was for his motorcycle, and his USAA policy was for two vehicles he owned.

2

10.     Mr. Fuller testified that his firm ran an asset check on the at-fault driver and that it showed the at-fault driver was judgment proof; therefore, the $325,000.00 received from the three insurance companies was the maximum amount he was able to collect for Debtor.

11.     Mr. Fuller testified that the $192,339.67 Debtor incurred in medical expenses was just one measure of damages Debtor incurred in the accident and that there was no question Debtor's expenses exceeded that amount. Mr. Fuller testified that ideally, with unlimited resources potentially available, he would have tried to collect at least $1 million as compensation for Debtor as a result of the accident.

12.     The releases executed with Allstate, Progressive, and USAA do not contain any statement regarding what specific type of damages the settlement payments were intended to compensate.

13.     Debtor introduced into evidence a Settlement Disbursement Statement prepared by Mr. Fuller's firm. The Settlement Disbursement Statement reflects that after payment of Mr. Fuller's fees, expenses advanced by his firm, and payment of all valid liens,[2] Debtor will receive a total sum of $150,996.97. The Settlement Disbursement Statement does not contain a breakdown of what amount of funds were allocated to each particular category of Debtor's damages.

14.     Peter Protopapas testified as an expert for Trustee in the area of settlement of personal injury cases.

15.     Mr. Protopapas testified that in a personal injury case, there are potentially twenty (20) separate compensable categories of damages, ranging from fixed damages such as medical

---

[2] Valid liens listed on the Settlement Disbursement Statement prepared by Mr. Fuller's office included a child support lien, loans made to Debtor for living expenses while his case was pending, a lien for debtor's bankruptcy attorney, and two medical liens (one for $48,992.00 and one for $185.54).

3

expenses and loss of income to less certain categories of damages such as disability and pain and suffering.

16. Mr. Fuller testified as an expert for Debtor in the area of settlement of motorcycle personal injury cases.

17. Both Mr. Protopapas and Mr. Fuller testified that medical records and billing statements are often attached to demand letters sent to insurance companies in connection with personal injury cases. Both experts testified that this is because insurance adjusters need some documentation to substantiate their decision to pay out policy limits, that medical records and billing statements are evidence of the extent of an individual's injuries, and that such documentation will provide an adjuster with some justification to pay out policy limits.

18. Debtor's bodily injury damages easily exceed the $325,000.00 recovered.

19. Debtor filed his chapter 7 case on November 23, 2015.

20. On his Schedule B, Debtor listed a personal injury settlement claim in the amount of $325,000.00. On his Schedule C, Debtor claimed an exemption in the personal injury settlement in the amount of $1,000,000.00 pursuant to S.C. Code § 15-41-30(A)(12)(b).

21. On his Schedule F, Debtor listed medical bills in the total amount of $192,930.67.

22. Debtor received his chapter 7 discharge on March 8, 2016.

## **CONCLUSIONS OF LAW**

A chapter 7 trustee has a duty to "collect and reduce to money the property of the estate for which such trustee serves." 11 U.S.C. § 704(a)(1). "The Bankruptcy Code allows a debtor to prevent the distribution to creditors of certain property by claiming it as exempt." *In re Sims*, 421 B.R. 745, 749 (Bankr. D.S.C. 2010). Federal Rule of Bankruptcy Procedure 4003(b)(2) provides that the trustee may object to a debtor's claim of exemption "at any time prior to one year after the

4

closing of the case if the debtor fraudulently asserted the claim of exemption." The trustee, as the party objecting to the exemption, has the burden of establishing that the debtor's exemption is not properly claimed. Fed. R. Bankr. P. 4003(c).

South Carolina has opted out of the federal exemptions, so the exemptions available to a bankruptcy debtor arise under state law. *In re Lafferty*, 469 B.R. 235, 244 (Bankr. D.S.C. 2012). The exemption at issue here is set forth in S.C. Code § 15-41-30(A)(12)(b), which states, in relevant part:

> (A) The following real and personal property of a debtor domiciled in this State is exempt from attachment, levy, and sale under any mesne or final process issued by a court or bankruptcy proceeding:
> . . .
> (12) The debtor's right to receive or property that is traceable to:
> . . .
> (b) a payment on account of the bodily injury of the debtor or of the wrongful death or bodily injury of another individual of whom the debtor was or is a dependent.

"Unlike several of section 15-41-30's other exemptions, [the personal injury exemption] contains no monetary cap, because, *inter alia*, the 'purpose of a personal injury or wrongful death payment is to compensate the victim for something lost, rather than to provide a windfall award.'" *Scholtec v. Estate of Reeves*, 327 S.C. 551, 555 (Ct. App. 1997) (quoting *Cerny v. Salter*, 311 S.C. 430, 432-33 (1993)).

Trustee argues that $192,339.67 of Debtor's personal injury settlement funds were for medical damages, not bodily injury, and therefore are not exempt under section 15-41-30(A)(12)(b). Trustee argues that the exemption should be allowed in the amount of $23,863.85,[3] and that the remainder of the funds received by Debtor, in the amount of $192,339.67, are non-exempt and should be turned over to Trustee. Debtor responds that the entirety of the settlement

---

[3] This amount represents the amount of the settlement after deduction of Mr. Fuller's fees.

5

funds are properly exempt because all of the funds are directly attributable to Debtor's personal, bodily injuries as a result of the accident. Debtor argues that the medical bills were only one aspect of Debtor's total damages, which are based in part on the medical bills and based in part on Debtor's other categories of damages.

South Carolina courts have had few occasions to interpret the exemption statute for personal injury awards. One of the primary cases on this issue is *In re McWhorter*, C/A No. 05-03135-JW (Bankr. D.S.C. Mar. 24, 2006). In *McWhorter*, Mrs. McWhorter suffered damages as a result of complications experienced in connection with a microscopic gall bladder surgery. *Id.*, pg. 1. The McWhorters filed separate complaints in state court. Mrs. McWhorter's complaint included claims for damages for permanent injuries, medical expenses, and the inability to work in the future. *Id.*, pg. 2. Mr. McWhorter claimed damages as a result of loss of services and loss of consortium. *Id.* The McWhorters ultimately settled their state court actions for $462,500.00. *Id.* Their settlement was memorialized in a settlement agreement which did not allocate settlement proceeds between the various causes of action. *Id.* The McWhorters sought to exempt the entirety of the settlement proceeds in their chapter 13 bankruptcy case, and the chapter 13 trustee and a creditor claiming "priority" in the settlement proceeds objected to the exemption. *Id.*, pg. 3.

The Court found that, with the exception of $2,500.00 that the McWhorters conceded might be non-exempt as consideration for the release of Mr. McWhorter's claims of loss of services and loss of consortium, the entire amount of the settlement proceeds were exempt. *Id.*, pg. 7. The Court stated:

> An objecting party "does not satisfy his burden merely by pointing to the Debtors failure to allocate the settlement into its component parts." "Rather, as long as the Debtor expressly or impliedly characterizes the settlement as falling within an exempt category, the Trustee retains the burden of proof and must present evidence to the court if he wishes to prevail on his objection. In this case, Debtors have sufficiently characterized the

6

>   settlement proceeds as exempt by showing that proceeds are for the payment for bodily injuries sustained by Mrs. McWhorter. Courts should not result [sic] to speculation when allocating settlement proceeds between exemptible and non-exemptible damages. . . . In this case, there is no precise proof that all of the settlement proceeds are not for bodily injury sustained by Mrs. McWhorter. The Trustee and [creditor] . . . merely raised speculation that some of the proceeds may not be exempt under South Carolina law. This speculation is insufficient to meet their burden of proof and sustain their objections. Testimony presented by Debtors was credible and it appears that Mrs. McWhorter sustained severe bodily injuries and received compensation through the settlement proceeds, which are entirely exempt under South Carolina law except for a *de minimus* amount that may be attributable to the claim of Mr. McWhorter.

*Id.*, pg. 5-7 (internal citations omitted).

Here, as in *McWhorter*, Trustee has not met her burden of establishing Debtor's settlement proceeds are not exempt. Trustee relied heavily on the fact that Mr. Fuller's demand letters to Allstate, Progressive, and USAA attached Debtor's medical records and billing statements for her argument that the settlement proceeds were for medical expenses. However, both Debtor's expert and Trustee's expert testified that medical expenses are only one separate category of damages, and that it is not uncommon to send medical records and billing statements when making demands to insurance companies, especially when damages clearly exceed policy limits, because such documentation is evidence of the extent of injuries. Mr. Fuller testified that attaching such documentation to a demand often leads to the insurance company quickly paying out policy limits. Thus, the mere fact that the demand letters sent to Allstate, Progressive, and USAA attached medical records and billing statements does not establish the payments made by those companies were for medical expenses.

Further, no evidence was presented indicating that the settlement proceeds were allocated in any fashion to specific categories of damages. The releases Debtor executed with Allstate, Progressive, and USAA do not contain any indication as to what categories of damages the funds

7

were intended to compensate, and the Settlement Disbursement Statement from Mr. Fuller's firm does not contain any allocation of the proceeds. Additionally, and importantly, testimony from Debtor and Mr. Fuller indicated that Debtor's injuries far exceeded the amount recovered - Mr. Fuller testified, and Trustee did not dispute, that Debtor's case was worth at least one million dollars. In the absence of some evidence indicating how the settlement proceeds were intended to be allocated, the Court will not speculate that the recovery was intended to compensate for medical expenses. *See McWhorter*, pg. 5 ("Courts should not result [sic] to speculation when allocating settlement proceeds between exemptible and non-exemptible damages.") (citing *In re Whitson*, 319 B.R. 614, 617 (Bankr. E.D. Ark. 2005)).

The Court in *McWhorter* defined "bodily injury" as "'physical damage to a person's body'"[4] and stated, "'Consequential damages, such as loss of consortium, medical and hospital expenses, etc., are generally held not to constitute "bodily injuries" . . . .'" *Id.*, pg. 4 (quoting *Stewart v. State Farm Mut. Auto. Ins. Co.*, 341 S.C. 143, 152, 533 S.E.2d 597 (Ct. App. 2000)). Testimony established that Debtor had no medical conditions prior to the accident, that he was unmarried, unemployed, and had no minor children living with him. Based on the evidence presented, it appears that the entirety of the settlement proceeds were paid to Debtor as a direct result of the accident, and to compensate him for his bodily injuries. The entire amount of the settlement proceeds are exempt under S.C. Code § 15-41-30(A)(12)(b).

---

[4] *Id.*, pg. 4 (quoting Black's Law Dictionary 789 (7th Ed. 1999).

8

**CONCLUSION**

For the reasons set forth above, Trustee's objection to Debtor's exemption is overruled. Debtor's personal injury settlement award is exempt.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**06/24/2016**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 06/24/2016